## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 10 2018, 11:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dale W. Arnett
Winchester, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jimmy D. Edwards,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 10, 2018

Court of Appeals Case No.
18A-CR-789

Appeal from the Randolph
Superior Court

The Honorable Peter D. Haviza,
Judge

Trial Court Cause No.
68D01-1608-F6-568

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jimmy Edwards (Edwards), appeals his conviction for Count I, sexual battery, a Level 6 felony, Ind. Code § 35-42-4-8(1)(A); Count II, battery on a person less than fourteen years old, a Level 6 felony, I.C. § 35-42-2-1(e)(3); Count III, interference with reporting of a crime, a Class A misdemeanor, I.C. § 35-45-2-5(1); and Count IV, theft, a Class A misdemeanor, I.C. § 35-42-4-2(a).

We affirm.

# ISSUE

Edwards presents one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to support Edwards' conviction.

# FACTS AND PROCEDURAL HISTORY

At around 2:00 a.m. on August 19, 2016, Edwards arrived unannounced at E.P.'s house looking for a place to sleep. Based on the way Edwards was acting, E.P. formed the opinion that Edwards was intoxicated. After offering Edwards a "baby mattress and a blanket" to sleep in the living room, E.P. returned to her bedroom which she shared with her three-year-old son and laid in bed. (Tr. Vol. II, p. 115).

After about ten minutes, Edwards walked into E.P.'s bedroom, got on top of E.P., and proceeded to grab and pull E.P. to the edge of the bed. Edwards

asked E.P. what time it was, and at that point, E.P. got out of bed and walked to the kitchen to show Edwards the clock. While standing in the kitchen, Edwards attempted to kiss E.P. E.P. pulled away and began walking back to her bedroom. Edwards stopped E.P. midway in the living room and told E.P. that she "ain't [sic] never had a brother like him." (Tr. Vol. II, p. 131). E.P. shook her head, ignored Edwards' inappropriate advances, and walked back to her bedroom and laid in bed. (Tr. Vol. II, p. 134). Edwards followed E.P. to her bedroom. Once again, Edwards told E.P. that she "ain't [sic] ever had nothing like him before." (Tr. Vol. II, p. 134). Edwards thereafter pulled E.P. to the "foot of [her] bed," put his hands in the back of E.P.'s shorts and began pulling them down. (Tr. Vol. II, p. 135). After a brief struggle, Edwards successfully removed E.P.'s shorts and underwear, and then pinned E.P. on the ground. At that point, Edwards had "an erection" and he was "trying to hump [E.P.'s] leg and trying to force it in" her. (Tr. Vol. II, p. 118). E.P. struggled to free herself from Edwards by kicking, biting, and shouting many times, "No, don't do this." (Tr. Vol. II, p. 118). E.P. also yelled for help.

[6] After hearing screams for help, W.P., E.P.'s thirteen-year-old son who was sleeping in another bedroom, rushed into his mother's room to help. When W.P. entered the room, he saw Edwards on top of his mother on the bedroom floor. W.P. formed the opinion that Edwards was "trying to rape [his] mom." (Tr. Vol. II, p. 164). W.P. "tried to get [Edwards] off of [E.P.]," but Edwards "shoved" W.P. and he "hit the wall." (Tr. Vol. II, p. 164). Due to the commotion, E.P.'s three-year-old son woke up and began to cry. E.P.

continued to yell for help, and stated, "are you seriously going to do this to me in front of my kids[?]" (Tr. Vol. II, p. 151). At that moment, E.P.'s cousin, William West (West), who was sleeping in another room, entered the room to help E.P. When West saw Edwards on top of E.P., and also believing that Edwards was about to rape E.P., he quickly returned to his bedroom and called 911. While West was reporting the crime, Edwards walked into his room, took West's cellphone out of West's hands and ended the 911 call. After taking West's cellphone, Edwards put it in his pocket and left E.P.'s house. Once outside, Edwards tossed West's cellphone into a bush down the road from E.P.'s house.

[7] Moments later, Officer Jason Melton (Officer Melton) of the Winchester Police Department arrived at E.P.'s house. West explained the events to Officer Melton, and Officer Melton sent out a dispatch through the radio to find Edwards. Officer Jerry Hammons (Officer Hammons) and another officer located Edwards about a block away from E.P.'s house. When Officer Hammons ordered Edwards to stop, the first thing Edwards stated was that "he didn't rape" E.P. (Tr. Vol. II, p. 243). Officer Hammons and the other officer observed that Edwards had "an erection." (Tr. Vol. II, p. 243).

[8] On August 8, 2016, the State filed an Information, charging Edwards with Count I, sexual battery, a Level 6 felony; Count II, battery on a person less than fourteen years old, a Level 6 felony; Count III, interference with reporting of a crime, a Class A misdemeanor; and Count IV, theft, a Class A misdemeanor. On January 24 through January 25, 2018, the trial court conducted a jury trial.

At the close of the evidence, Edwards was found guilty as charged. On March 7, 2018, at the sentencing hearing, Edwards was sentenced to concurrent terms of two and one-half years to Counts I and II. As for Counts III and IV, the trial court imposed concurrent one-year sentences. Count I was to run consecutive to Counts III and IV, and Edwards' aggregate sentence is three and one-half years.

[9] Edwards now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[10] Edwards claims that the State presented insufficient evidence to support all of his convictions. We will address each contention in turn. When reviewing a claim of insufficient evidence, it is well established that our court does not reweigh evidence or assess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). Instead, we consider all of the evidence, and any reasonable inferences that may be drawn therefrom, in a light most favorable to the verdict. *Id*. We will uphold the conviction "'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id*. (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

## I. *Sexual Battery*

[11] In charging Edwards with Level 6 felony sexual battery, the State alleged, in part, that

> [O]n or about August 19, 2016 [] Jimmy D. Edwards, with the intent to arouse or satisfy the sexual desires of Jimmy D. Edwards, did compel [E.P.] to submit to a touching by imminent threat of force, to-wit: held [E.P.] on the bed and removed her pants, contrary to the form of the statutes in such cases made and provided by I.C. [§] 35-42-4-8(a)(l)(A). . .

(Appellant's App. Vol. II, p. 144). The Indiana General Assembly has defined that the crime of sexual battery is committed when

> (a) A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person:
>
> (1) touches another person when that person is:
>
> (A) compelled to submit to the touching by force or the imminent threat of force[.]

Ind. Code § 34-42-4-8. After E.P. welcomed Edwards into her home, she gave Edwards a mattress and a blanket, and she required him to sleep in the living room. Ten minutes later, Edwards walked into E.P.'s bedroom, got on top of her, and "grabbed [] and pulled" E.P. (Tr. Vol. II, p. 116). After Edwards asked E.P. what time it was, E.P. got out of her bed and walked to the kitchen to show Edwards the clock. While standing in the kitchen, Edwards tried to kiss E.P. These unwanted advances escalated when Edwards followed E.P. back to her bedroom. After pulling E.P. to the foot of the bed, Edwards forcibly removed E.P.'s shorts and underwear. Thereafter, Edwards pinned E.P. on the ground. E.P. struggled to free herself from Edwards by kicking, biting, and shouting many times, "No, don't do this." (Tr. Vol. II, p. 118).

Notwithstanding E.P.'s pleas, Edwards, who at that moment had "an erection," humped E.P.'s leg while "trying to force it in" her. (Tr. Vol. II, p. 118). Officer Hammons testified that when he located Edwards, he still had "an erection." (Tr. Vol. II, p. 243).

[12] Edwards' many contentions revolved around the fact that E.P.'s testimony was uncorroborated and conflicted with other evidence. For instance, he claims that E.P. testified that her "shorts and underwear . . . both ripped. No shorts or underwear were produced at trial." (Appellant's Br. p. 11). He also argues that E.P. claimed that she bit his forearm during the struggle, "but there was no evidence of any injury" offered at his trial. (Appellant's Br. p. 11). Edwards adds that E.P. testified that he was wearing long pants when he committed the offense, however, one of the officers described that he wore shorts. Edwards' claim otherwise amounts to nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See Walker,* 998 N.E.2d at 726. Here, we find that the evidence supports the conclusion that Edwards, acting with intent to arouse or satisfy his own sexual desires, touched E.P. when she was compelled to submit to the touching by force or the imminent threat of force. *See* I.C. § 35-42-4-8(a)(1)(A).

## II. *Battery on Person Less than Fourteen Years Old*

[13] Indiana Code section 35-42-2-1 provides, in relevant part, that a "person who knowingly or intentionally . . . touches another person in a rude, insolent, or angry manner . . . . commits battery, a Class B misdemeanor." However, the offense is a Level 6 felony if the offense is "committed against a person less than

fourteen (14) years of age and is committed by a person at least eighteen (18) years of age." I.C. § 35-42-2-1(e)(3).

[14] In arguing that the evidence is insufficient to sustain his conviction for the Level 6 felony battery on a person less than fourteen years old, Edwards argues, "[g]iven the facts of the case when young [W.P.] was pushing and shoving on [him] it would not be unreasonable, rude, insolent or angry to push someone away who was pushing on you. There were no pictures and no evidence of any injury from the pushing away of [W.P.] by Edwards." (Appellant's Br. p. 11).

[15] Turing to the facts of the case, thirteen-year-old W.P. testified that after he heard his mother yell for help, he rushed to her aid. When he got to her bedroom, he saw Edwards on top of E.P. and he believed that Edwards was "trying to rape [his] mom." (Tr. Vol. II, p. 164). W.P. "tried to get [Edwards] off of [E.P.]," but Edwards "shoved" W.P. and he "hit the wall." (Tr. Vol. II, p. 164). Based on the evidence, we conclude that there was sufficient evidence to support Edwards' conviction for the Level 6 felony battery on W.P.

### III. *Interference with Reporting of a Crime*

[16] To sustain a conviction for interference with reporting of a crime, the State had to prove beyond a reasonable doubt that Edwards, with the intent to commit, conceal, or aid in the commission of a crime, knowingly or intentionally interfered with or prevented West from using a 911 emergency telephone system. I.C. § 35-45-2-5 (1).

[17] Edwards devotes one sentence to this issue in his brief, arguing that "if no sexual battery or battery had been committed, [he] could not be guilty of interference with the reporting of the commission of a crime." (Appellant's Br. p. 12). Edwards has waived this claim for not presenting a cogent argument on appeal. Indiana Appellate Rule 46(A)(8) provides in part that the argument section of the appellant's brief must "contain the contentions of the appellant on the issues presented, supported by cogent reasoning," along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts under review. Edwards did not do so, therefore he waives this argument. *See Reed v. Reid*, 980 N.E.2d 277, 297 (Ind. 2012).

[18] Waiver notwithstanding, we note that when West entered E.P.'s room and observed a man on top of E.P., West believed that the man was attempting to rape E.P. West returned to his bedroom and used his cellphone to call 911. Edwards followed West into his room, grabbed the cellphone out of West's hands, and ended the 911 call. Based on the evidence, we conclude that the State presented evidence of a probative value from which a reasonable trier of fact could have found Edwards guilty of interference with reporting of a crime as a Class A misdemeanor.

## IV. *Theft*

[19] Lastly, to convict Edwards of Class A misdemeanor theft, the State had to prove Edwards: (1) knowingly or intentionally; (2) exerted unauthorized control over property of another person; (3) with intent to deprive the other person of

any part of its value or use. I.C. § 35-43-4-2(a). We find that the evidence the State presented supports Edwards' theft conviction. After Edwards grabbed West's cellphone and ended the 911 call, Edwards put the cellphone in his pocket. West yelled "give me back my fucking phone you fucker," but Edwards refused. (Tr. Vol. II, p. 194). Edwards thereafter left E.P.'s house, and while outside, he tossed West's cellphone into a bush down the road. We conclude that there was sufficient evidence to support Edwards' conviction for Class A misdemeanor theft.

## CONCLUSION

[20] Based on the foregoing, we conclude that there was sufficient evidence to sustain Edwards' conviction for sexual battery, battery on a person less than fourteen years old, interference with the reporting of a crime, and theft.

[21] Affirmed.

[22] Vaidik, C. J. and Kirsch, J. concur